IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTINE RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-517-STE |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further consideration consistent with this Memorandum Opinion and Order.

## I.     PROCEDURAL BACKGROUND

On March 22, 2017, Ms. Rodriguez applied for disability insurance benefits and supplemental security income, alleging a disability beginning July 15, 2016. (TR. 15). Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision

on June 14, 2019. (TR. 15-26). The Appeals Council denied review on April 6, 2020, making the ALJ's decision the final decision of the Commissioner. (TR. 1-5). Thereafter, Ms. Rodriguez timely filed this appeal.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that, even though Plaintiff had attempted to work after her alleged onset date, that work had not risen to the level of substantial gainful activity as defined in the regulations. (TR. 18). Thus, the ALJ proceeded to the second step where she determined Ms. Rodriguez had severe impairments, including degenerative disc disease, osteoarthritis, major depressive disorder, and anxiety. (TR. 18).

At step three, the ALJ considered whether Ms. Rodriguez's impairments were severe enough to meet the requirements of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (TR. 18). First, the ALJ considered the Listing at 1.04, Disorders of the Spine, and determined the medical evidence of record did not demonstrate compromise of a nerve root or of the spinal cord with additional findings of either nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (TR. 20). Additionally, the ALJ considered the Listing at 12.04 in assessing Plaintiff's mental limitations, finding that Plaintiff's depression and anxiety did not meet either the Paragraph B criteria or the Paragraph C criteria. Thus at step three, the ALJ concluded that Ms. Rodriguez did not have an impairment or combination of impairments that met or medically equaled the severity of one of any of the Listings. (TR. 18).

At step four, the ALJ concluded that Ms. Rodriguez retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally; she can stand and/or walk six hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; she frequently can kneel and crouch; and, she occasionally can climb ladders, ropes, scaffolds and stairs as well as stoop and crawl. The claimant can understand, remember and carry out simple and detailed instructions. The claimant occasionally and superficially can interact with the public.

(TR. 20-21).

With this RFC, the ALJ concluded, based on the testimony of the vocational expert (VE), that Plaintiff could not perform her past relevant work. (TR. 24). But the VE testified there were other jobs in the national economy that Plaintiff could perform. Given the limitations identified by the ALJ in a series of hypothetical questions, the VE identified three unskilled jobs from the Dictionary of Occupational Titles that a hypothetical person with Plaintiff's impairments could allegedly perform: Housekeeping Cleaner, Merchandise Marker, and Mail Sorter. (TR. 62). At step five, the ALJ found the VE's testimony to be consistent with the information in the Dictionary of Occupational Titles and adopted the VE's testimony, concluding Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 25).

### III.   ISSUE PRESENTED

On appeal, Ms. Rodriguez contends the ALJ erred in failing to properly evaluate the opinion evidence of her treating physician. (ECF No. 17:13-18). The Commissioner contends that Plaintiff is simply asking this Court to reweigh the evidence. (ECF No. 21:9-14).

**IV.   STANDARD OF REVIEW**

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.   ANALYSIS**

Because Ms. Rodriguez filed her applications before March 27, 2017, the ALJ was required to analyze the opinion evidence, specifically that offered by Dr. Payton Flournoy, Plaintiff's treating physician, under 20 C.F.R. § 404.1527. This regulation, in effect at the time Plaintiff filed her applications for DIB and SSI, requires an ALJ to give more deference to the opinion of a treating physician than to other opinion evidence:

> Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527.[1]

This regulation requires an ALJ considering a treating physician's opinion to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks and alteration omitted).

Thus, an ALJ must first determine whether the treating physician's opinion deserves controlling weight. Controlling weight must be given if the opinion is both

---

[1] This regulation was replaced by 20 C.F.R. § 404.1520c. (effective March 27, 2017). The current regulation does not differentiate between medical opinions, so long as they are supported by evidence in the record.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

5

supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If both of these conditions are met, no other factors need be considered and the inquiry is at an end. *See id.*; *Watkins*, 350 F.3d at 1300.[2]

However, if one or both of these conditions is lacking, an ALJ is not free to simply disregard the opinion or pick and choose which portions to adopt. Instead, the ALJ must proceed to a second determination, where the ALJ must both (1) weigh the opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927" and (2) "give good reasons in the notice of determination or decision for the weight [the ALJ] ultimately assigns the opinion." *Watkins*, 350 F.3d at 1300–01 (internal quotation marks and alteration omitted).

If the ALJ does not afford the opinion of the treating physician controlling weight, the ALJ must determine the weight to be given the opinion by considering such factors as the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability;[3] consistency;[4] specialization; and other factors. 20 C.F.R. § 404. 1527(d)(1)-(6). Although the ALJ's decision need not

---

[2] Although the ALJ cited to the correct regulation, she failed to follow the steps the regulation required.

[3] "[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources."

[4] "[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."

6

include an explicit discussion of each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the record must reflect that the ALJ considered every factor in the weight calculation.

Dr. Payton Flournoy, D.O., Ms. Rodriguez's treating physician, completed and submitted a "Treating Source Statement—Physical Conditions" (TR. 478-481) and a "Treating Source Statement—Psychological Conditions" (TR. 482-486) containing his summary of opinions regarding the limiting effects of Plaintiff's physical and mental impairments.

Ms. Rodriguez alleges legal error in the ALJ's evaluation of these opinions. This Court agrees. As discussed in further detail below, the ALJ erred in her analysis of Dr. Flournoy's opinions as well as the opinions of the consultative physicians. Her unfavorable decision consists solely of citations to the portions of medical opinions that support her RFC. The ALJ simply ignored all opinions that would support a finding of disability.

The forms Dr. Flournoy completed consist of check mark boxes and explanatory statements. Dr. Flournoy stated he had treated Plaintiff every 1-2 months beginning in January 2018. His list of diagnoses included low back pain with sciatica, anxiety, migraines and insomnia. Dr. Flournoy indicated Plaintiff's physical conditions would interfere with her attention and concentration more than 25% of the time, that she would be able to maintain attention and concentration less than 30 minutes at a time without needing a break and that she would be absent from work more than 4 days per month because of her impairments. (TR. 478-479). Dr. Flournoy stated Plaintiff could lift and carry less than 10 pounds frequently and 10 pounds occasionally. Dr. Flournoy attributed these limitations to her "pain and hypertonic paraspinal musculature bilaterally along cervical

7

and thoracic spine" as demonstrated by a CT scan showing degenerative changes along the spine. Dr. Flournoy noted Plaintiff's "diffuse lumbar paraspinal tenderness and hypertonicity, sciatic pain with bilateral leg flexion." He further found Plaintiff is "unable to tolerate even gentle soft tissue procedures like massage and strengthening." (TR. 479). Dr. Flournoy stated Plaintiff could sit for 2 hours and stand or walk for 6 hours in an 8-hour workday. But he also stated Plaintiff would have to lie down or recline "at least hourly" for 10-15 minutes throughout the workday. (TR. 479-480). Significantly, Dr. Flournoy stated that Ms. Rodriguez required a cane or walker to ambulate and that she could walk only 100 feet without an assistive devise. (TR. 480).

In the statement regarding Plaintiff's psychological conditions, Dr. Flournoy's diagnoses included the physical ailments along with anxiety and recurrent major depressive disorder. (TR. 482). Although Dr. Flournoy assessed her prognosis as "good," he diagnosed Plaintiff with depression, characterized by anhedonia, insomnia, and feelings of worthlessness. Further, he stated her chronic anxiety led to sleep disturbances and interfered with her ability to function productively. (TR. 482). In assessing the severity of Ms. Rodriguez's symptoms, Dr. Flournoy stated they were "mild, would not limit most work environments." (TR. 483). Still, Dr. Flournoy was of the opinion that Ms. Rodriguez would be "off task" 20% of the working day and would miss 1 day of work a month because of the symptoms associated with anxiety and depression. (TR. 486).

Based on the testimony of the VE, Ms. Rodriguez contends that a person who is "off task" 20% of the time or needs to miss even 2 days of work per month or needs extra breaks during the work day would be unable to secure any full time employment. (ECF No. 17:15); *See* (TR. 63). According to Dr. Flournoy's opinion, Plaintiff fits all three

of the above descriptions. Thus, according to Plaintiff, the ALJ should have included these limitations, assessed by her treating physician, in the RFC.

The ALJ afforded minimal weight to Dr. Flournoy's opinions regarding Plaintiff's physical limitations, finding his opinions were "inconsistent with the above residual functional capacity" and "entirely unsupported by his treating records and the evidence of record as a whole." (TR. 23). There is no indication the ALJ took into account Plaintiff's need to use a cane or walker, nor did the ALJ include this limitation in her hypothetical questions to the VE. Therefore, the VE did not consider whether the jobs she had identified could be performed by a hypothetical person who needed to use a cane or walker to ambulate.

On the other hand, the ALJ gave "great weight" to Dr. Flournoy's opinions that Plaintiff's depression and anxiety "were mild and would not limit most work environments" and his findings that Plaintiff had "no limitations related to her mental health." (TR. 23). But the ALJ does not address Dr. Flournoy's conclusion that Plaintiff would be "off task" 20% of the time because of her mental impairments, nor does she attempt to reconcile these diametrically opposed opinions.

The ALJ also gave "great weight" to the opinion of the consultative psychologist, Christopher Campbell, Ph.D., who examined Plaintiff on March 16, 2018. Dr. Campbell diagnosed Plaintiff with recurrent, mild major depressive disorder. Dr. Campbell assessed Plaintiff's prognosis as fair and determined her intelligence was average. He assessed Plaintiff's fund of knowledge as "adequate" and found her thought process to be clear, coherent and linear. (TR. 442). The ALJ concluded Dr. Campbell's opinion should be given

"great weight" because "it is well supported by the medical evidence of record in its entirety and consistent with the above residual functional capacity." (TR. 23).

Ms. Rodriguez was also examined by consultative physician, S. A. Chaudry, M.D. Dr. Chaudry recognized Plaintiff's pain-producing impairment as osteoarthritis of the lumbosacral spine. (TR. 494). The ALJ noted Dr. Chaudry's findings that Plaintiff had normal gait, normal range of motion of the lumbar spine and negative straight leg raising test. (TR 22). But even though the Range of Joint Motion Evaluation Chart Dr. Chaudry used indicated full range of motion, he also reported Plaintiff had "painful range of motion of flexion, extension, rotation and lateral movements with bilateral paraspinous muscular tenderness." (TR. 494). Thus, a reasonable inference from this evidence is that, although Plaintiff could perform movements indicating a normal range of motion, those movements caused pain. The ALJ did not take the reported pain into account. What is more, Dr. Chaudry's report that Plaintiff could perform heel-toe walking and could walk unassisted, was based solely on one examination. Such a finding does not necessarily contradict Dr. Flournoy's opinion that Plaintiff can walk only 100 feet unassisted.

In sum, the ALJ supported her unfavorable decision by citing only the evidence that favors her determination of Plaintiff's RFC. In fact, it appears she formulated her RFC first, and then sought opinion evidence to support it. On remand, the ALJ should evaluate the evidence using the steps listed in the applicable regulation. Moreover, the ALJ should consider all opinion evidence and explain why she rejects any evidence supporting a finding of disability.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for additional consideration consistent with this Memorandum Opinion and Order.

ENTERED on March 31, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE